## VAN KANNEL REVOLVING DOOR CO. v. GENERAL BRONZE CORPORATION
### (two cases).
### Nos. 130, 131.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

For the opinion below, see 6 F. Supp. 518.

Jay Leo Rothschild, of New York City (Charles Neave, Edmund Quincy Moses, and Clarence M. Crews, all of New York City, of counsel), for appellant.

T. Hart Anderson, of New York City (Munn, Anderson & Liddy and Daniel H. Kane, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The Blanchard patent is for a revolving door of the type known as the "full collapsible panic proof" type. A panic-proof revolving door is one whose four wings, which project radially from a central upright rotary support and revolve in fixed relation with it under normal use, are so arranged as to be capable of collapsing in response to abnormal pressure applied to wings on opposite sides of the central shaft so as to fold together like the leaves of a book, thus projecting from only one side of the shaft and leaving an open passage at each side thereof for the panic-stricken crowd. Doors of this general character had long been successfully manufactured by the complainant and its predecessor under Reissued patent, No. 14,255, to Van Kannel which had expired before Blanchard filed his application of February 26, 1931, for the patent in suit. His specifications state that the object of his invention is to make a simpler and less expensive structure than the doors of the prior art, and recite: "More particularly, the invention resides in an improved means for supporting the door wings from, connecting the same with and guiding said leaves for movement with respect to a rotary central support or shaft, in which use is made of an element movable with and disposed perpendicular to said central support or shaft and in which said element and each door wing are provided with axially extending inter-engaging recessions and projections serving to permit each door wing to swing successively on relatively different axes." The structure described in the patent consists of the central shaft A to which is attached near its upper and lower ends a pair of discs 10. These discs support the wings, and when normal pressure is applied to any one of the wings, the shaft, the discs, and the four wings rotate together. A three-point connection is provided between each wing and each of the discs, shown as the pin 21 and the two pins 22 mounted on the wing and the communicating slots or guideways in the disc into which the pins set. When a wing collapses it pivots on pin 21 and the pins 22 slide circumferentially in their slots in the direction in which the abnormal pressure is applied. When one of the pins 22 reaches the end 17 of its guideway, the wing ceases to pivot on the pin 21 and thereafter pivots on said pin 22 in the end of its guideway. In the course of such pivoting the other pin 22 (and if pivoting continues through a sufficient arc, the pin 21 also) is drawn completely outside the circumference of the disc through an opening therein provided for that purpose.

This arrangement is different from anything which appears in the prior art structures, and we cannot say that it required less than inventive skill to devise it. The District Court found that the Blanchard patent has had great commercial success. We regard it as a valid patent for the specific combination disclosed; it produced the old result of a collapsible panic-proof revolving door by a new arrangement of parts. It is not, however, in any sense a pioneer patent; and it will be entitled to only a narrow range of equivalents when the question of infringement comes to be considered.

The defendant's door also consists of an arrangement of discs and pins to provide the means for holding the wings in fixed radial position under normal use and for swinging them on a pivot when they are collapsed under abnormal pressure. Each wing has a three-point connection with each disc, comprising a pair of axially extending pins mounted on the disc which fit into sockets on the wing, and an axially extending pin mounted on the wing which fits into a groove on the disc. When the wing is collapsed it pivots on one of the disc pins while the wing pin moves along the groove as a guideway. A set of such pins and grooves is provided for each wing, the elements be-

ing on the upper face of the disc for two of the wings and on the lower face for the other two.

Infringement is asserted on the theory that the defendant has merely reversed the parts of the patented structure so as to obtain the same result by the same principle of operation. This was the view adopted by the district judge. Referring to Exhibit 17, he said that both in the patented device and in the defendant's structure the three fulcrum points form a triangle, the apex of which in the patented device is disposed toward the center of the disc, while in the defendant's the apex is toward the periphery of the disc; and in each instance the wing, in collapsing, pivots about one of the corners of the base line, and the pivotal points and guideways are eccentrically disposed with respect to the central upright rotary support of the door. It is true that the defendant has obtained the same result, of a collapsed door; but we are unable to agree with the conclusion that he obtains it by the same principle of operation. Blanchard's mode of operation is first to pivot on pin 21 while pin 22 moves sidewise along its groove until it reaches the end 17, when it becomes the pivot for the remainder of the collapsing motion. Thus it operates on the principle of a compound pivotal movement about successive axes. The defendant has arranged its wing to operate by a simple pivotal movement about a single axis. The reversal of the location of the elements of the patent has resulted in a different principle of operation. In view of Blanchard's specifications and claims, and the state of the art, this difference is important. In addition to the quotation already made from the specifications, there are other provisions which stress the inventor's thought that his improved means for supporting the wings in normal radial position also "permits of their movement on successively different axes to a fully collapsed position" (page 1, lines 34–36). The claims in suit are claim 4, 6, and 12 to 18, inclusive. Claim 4 reads: "4. In a full collapsible revolving door structure, means for supporting the door wings from and guiding the same for movement with respect to a central rotary support, said means including a plurality of pins carried by each door wing and a plurality of communicating guideways formed on said central support to permit each wing to move successively on different axes." Certainly this claim cannot be infringed by supporting means which do not permit each wing to move successively on different axes. The specific and self-imposed limitation of the claim cannot be ignored. Claim 4 is not infringed. Claims 12 and 13 we read as also limited to successive pivoting on different axes; they are not infringed.

The other claims in suit are not verbally so limited. Claim 6 is the most specific of them. This calls for a set of projections and recesses "to permit each door wing to swing in one direction upon one projection as an axis and to swing in the opposite direction upon another projection as an axis." Taken literally this does not describe the structure shown in the patent, which requires a swinging upon two projections as successive axes in order to collapse the wing. If the claim be read as an attempt to claim broadly the idea of using pin and slot connections to fasten the wings of a revolving door to the central support, no invention was involved. The idea of a pin and slot hinge connection was at least as old as the patent to Foster, No. 696,027. The Van Kannel reissued patent, No. 14,-255, used a pin on the wing and a groove in the disc as a means of connecting the wing to the central support. It was not the broad conception of using one pin as a pivot and another in a slot as a guideway which constituted Blanchard's inventive idea, but the combination of the several elements into a specific operative structure. He conceived of a structure which could operate only by a compound pivotal movement about successive axes, and that was all he disclosed. It would be going beyond anything he contributed to this crowded art to permit him to monopolize the field so as to prevent others from combining the same well-known elements into a hinge which could operate by a simple pivotal movement about a single axis. In our opinion all of the claims in order to be valid must be limited by the specifications to the structure disclosed. So limited none of them is infringed and the bill of complaint on the Blanchard patent should have been dismissed.

■ The other suit relates to patent No. 1,-514,851 to Gormley. This patent relates to a speed control mechanism for revolving doors which will permit the door to rotate without hindrance up to a predetermined speed and will then brake and retard the rotation. The device as shown in the patent discloses a gear 17 rigidly fixed to the lower end of the central spindle 10 of a revolving door; the gear 17 meshes with a pinion 32 and on the same shaft as the pinion is another gear 30 which engages the

thread of a horizontally disposed worm 26 and causes the shaft 28 of the worm to revolve. At one end of the shaft 28 is a disc 22 on which are mounted in a vertical plane three brake dogs 23 each of which is pivoted at a point 24. When the disc 22 revolves at a sufficient speed, centrifugal force will cause the brake dogs to engage with the circumferential brake shoe 21 and thus retard the rotation of the disc 22 and of the spindle 10. The specifications recite that the ratio of the gears 17, 30, and 32 and the worm 26 is such that under ordinary conditions the revolving door will operate without actuating the speed controlling mechanism, but when the predetermined speed of rotation is exceeded the brake is applied. The claims in suit are 1 to 5, inclusive, and 9. Claim 1 is typical of claims 1 and 2; and claim 9 is typical of the remaining claims in suit.

The defendant contends that the Gormley patent is invalid, and that the device it discloses is inoperative and has never been used by the plaintiff or any one else. It was purchased by the plaintiff for an undisclosed consideration in November, 1932, after the defendant had installed a centrifugal friction governor of the sort alleged to infringe; but of course the date of purchase is immaterial if the patent is valid and infringed.

In 1924 when Gormley applied for and obtained his patent the conception of retarding the revolution of a rotary shaft by means of a centrifugal friction brake was old. The patent to Ireland, No. 603,363, dated May 3, 1898, shows its application to engine governors. This is criticized as unsuited for a revolving door because its braking action would be insignificant if the device were mounted directly on the spindle of a revolving door. Ireland has no train of gears to step up the speed, such as Gormley introduced. But Gormley was not the first to introduce this idea into the revolving door art. The patent to Blickensderfer, No. 1,014,997 shows a centrifugal friction brake applied to a revolving door. This shows an arrangement in which the governor is driven by means of gearing so as to operate at a higher speed of rotation than the door, and centrifugally actuated ball arms cause a movable friction surface to engage a fixed friction surface. This device is criticized as being entirely exposed to view and for that reason being made so small that the frictional resistance would be small. It could hardly be deemed invention to think of moving the unsightly Blickensderfer device into a concealed position above the door, particularly when the Van Kannel liquid governor had long been arranged in that location. Hence we think the state of the art left nothing for Gormley to invent except details of mechanism.

The defendant attacks Gormley's device as inoperative. He utilizes a worm as the principal element of his speed multiplying means. This necessitates having the worm shaft horizontal and having the disc and friction elements in a vertical plane. The brake dogs 23 are not retracted by springs, and consequently the dog or dogs below the center of the disc will gravitate into contact with the brake shoe 21 and interpose a slight frictional resistance to any movement of the door, and this initial resistance will necessarily be increased as the speed of the door increases. It is impossible for the door to revolve freely until a predetermined speed of revolution is attained. The plaintiff's commercial device has cured these defects by using spur gears instead of a worm so that the brake dogs and frictional shoe lie in a horizontal plane, and by retracting the dogs by springs which can be adjusted to regulate the speed at which braking action will operate. The fact that no one ever used a governor manufactured in accordance with the Gormley patent tends to support the charge that it was inoperative. The plaintiff's witnesses testify to difficulties encountered in the use of its liquid governor, and in attempts to use electrical controls. It is contended that the art needed a mechanical governor operating on the centrifugal principle. Yet no one seized upon Gormley's invention when it appeared in 1924 or has ever used it since. We think the defendant is right in the contention that it was an inoperative paper patent which had no effect on the art and was only brought to light by the plaintiff in an effort to monopolize the field after the defendant had already installed, to the plaintiff's knowledge, a governor of the type now charged to infringe. In our opinion the Gormley patent is without merit and the bill of complaint in the suit upon it should have been dismissed.

Decrees reversed.